THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES L. ROSE, Defendant-Appellant.

(No. 71-212;

Second District—September 1, 1972.

Ralph Ruebner, of Defender Project, of Elgin, (Matthew J. Moran, of counsel,) for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant herein was indicted in September of 1968 for forgery and theft from the Zion State Bank & Trust Company. He was tried by a jury; found guilty of both offenses; and sentenced on the forgery charge for a term of 10-14 years in the Illinois State penitentiary and 9-10 years on the theft charge, the sentences to run concurrently. It was further provided that the two sentences were to run consecutively to a previously imposed sentence of the United States District Court for the Eastern District of Missouri, Docket No. 69-CR 253 (2).

The indictment herein charged the defendant with the forgery of a $537 check and theft of the same amount. The evidence indicates that on the 4th of June, 1968, the defendant presented a check drawn upon the Hyde Park Bank & Trust Company of Chicago, Illinois, payable to the order of cash, purportedly signed by Diane Bland Cohen. The defendant represented himself to be Edward F. Gustisha, endorsed the check in that name, and received the sum of $537 from the bank teller. Both the teller cashing the check and the teller working next to her identified the defendant as the man representing himself to be Gustisha and to whom the funds were paid under that name. He was subsequently arrested. Following his indictment he was found not competent to stand trial in a hearing in the Circuit Court of Lake County and was committed to the Illinois Department of Public Health. In August of 1969, he was released from the Department of Public Health and returned to Lake County. Upon his application, his bond was reduced and he was released on bond pending trial. Following his release to the custody of the Federal marshal in Chicago, he was arraigned on a Federal warrant from Nevada and released on a $5000 surety bond. On September 1, 1969, he was arrested in Chicago for deceptive practices and again made bond. Four days later, on the 5th of September, 1969, he was arrested in St. Louis, Missouri, for the armed robbery of a postal employee and on the 12th of December, 1969, he was sentenced to 1-10 years by the United States District Court for the Eastern District of Missouri. On the 21st of December, 1969, he was transferred to Las Vegas, Nevada, on another charge which was subsequently dismissed. On May 9th, 1970, he was received in the Federal Criminal Institution at Lompoc, California, under the Missouri District Court sentence. The defendant eventually ended up in the Federal Medical Center at Springfield, Missouri, on August 20, 1970. On February 22, 1971, he was returned to Lake County for trial

by the Federal authorities. Briefly, the defendant was incarcerated almost continuously in Federal institutions in Missouri, Nevada, Kansas, and California, from the time he made bond in the Lake County Circuit Court. The bond was forfeited and a *capias* issued for his apprehension.

On July 16, 1970, while he was awaiting trial in the Federal court in California he filed a "Petition and Motion for dismissal" in the Lake County Court alleging that he had been denied "a just and speedy trial in Lake County" and that there was a "lack of prosecution." The motion for dismissal was set for August 26, 1970, continued to December 16, 1970, again continued to January 6, 1971, and on January 11, 1971, the defendant's motion was denied and the State was ordered to secure the defendant's presence by a writ returnable on March 2, 1971. On February 22, 1971, he was returned to Lake County for trial. On February 24, 1971, defendant through his counsel, moved for a competency hearing. The defendant was ordered examined as to his competency by two physicians under order of the court on that date. On March 3, 1971, the defendant moved for a pretrial sanity hearing. This motion was granted and on March 3, 1971, the jury was impaneled which found the defendant competent to stand trial. The trial was set for March 15, 1971, and on March 12, 1971, a motion for continuance by the defendant was made and denied. The defendant moved for other counsel and for substitution of judges, both motions were denied, and the matter was continued for trial to March 18th. The defendant through his counsel moved for a continuance to April 13, 1971, which was denied and the cause was ordered to remain on the trial court calendar for March 18, 1971. However, it was continued to March 29, 1971, when the defendant was tried by a jury which found him guilty as indicated above.

The defendant has raised three issues in this appeal. The first contention of the defendant is that the court committed reversible error when it denied the defendant the right to defend himself. In support of this contention the defendant has cited three cases: *People v. Sinko*, 21 Ill.2d 23, 171 N.E.2d 9; *People v. Morris*, 43 Ill.2d 124, 251 N.E.2d 202; and *People v. Nelson*, 47 Ill.2d 570, 268 N.E.2d 2.

In *Sinko* the defendant contended that the court erred in failing to appoint counsel to represent him in the trial. At his request the court said "The right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel * * *." It can thus be seen that in *Sinko* where the court honored the request of the defendant to represent himself the defendant then raised as an issue the contention that the court should have appointed counsel even though he refused such representation.

In *Morris* counsel was not appointed and the court stated at 204: "The

record shows that the appellant was fully advised of his right to counsel by the trial court as to each of the indictments. There is nothing to suggest that this 26-year-old accused did not understand the explanation of his rights and did not intelligently waive counsel."

■■ In *Nelson* the defendant was advised of his right to counsel and that the court would appoint counsel. Before proceeding with the plea the court again offered counsel which the defendant refused. Defendant on appeal contended that he was denied the right to counsel and that regardless of his waiver counsel should have been appointed. The court went on to say on page 5:

"* * * The constitution does not force a lawyer upon a defendant. He may waive his constitutional right to counsel if he knows what he is doing and his choice is made with his eyes open. [Citations.] The 'right of a defendant to represent himself, when his choice is intelligently made, is as [basic and] fundamental as his right to be represented by counsel.' [Citations.] * * *."

The oddity of defendant's contention in this regard is apparent. In all three cases cited, counsel was waived and in fact was not appointed, and the defendants in these three cases appealed on the ground that counsel should have been appointed nonetheless. This is scarcely authority for the contention of the defendant that the court should not have appointed counsel for him in the instant case. While the defendant has the right to defend himself when the choice is intelligently made, the appointment of counsel for his assistance does not violate any constitutional right of such defendant when in the considered opinion of the court it was questionable that defendant was capable of defending himself. Examination of the astoundingly assorted legal charges against this defendant is outlined in part above; and in view of the fact that defendant was committed to several mental institutions by the Federal court and by the State court, the trial court obviously did not abuse its discretion in appointing counsel. On March 24th, 1971, the defendant requested the appointment of private counsel or leave to defend himself. The court denied this motion. The defendant was diligently represented by the assistant Public Defender. A hearing was had as to the competency of the defendant to stand trial on March 3, 1971. Even after that the Public Defender requested a further sanity hearing before trial, which was denied. The record indicates that counsel for the defendant represented the defendant vigorously and afforded to him every possible defense that he could have raised.

Defendant next contends that he was not tried within four months after his "motion for discharge" and cites in support thereof Ill. Rev. Stat. 1969, ch. 38, par. 103—5. Examination of the facts herein discloses

that such a contention is without merit. As indicated above, the defendant on July 16, 1970, filed a "Petition and motion for dismissal in the Lake County Court." At that time he had failed to appear in that court, his bond had been forfeited, and a *capias* issued for his arrest. Likewise, on July 16, 1970, he was in custody of the Federal authorities in San Francisco, California, awaiting trial. The motion was continued by order of court and a writ of *habeas corpus ad prosequendum* was obtained. He was finally returned to Lake County on February 22, 1971.

The defendant raises the novel argument that he should not be treated differently than any other defendant because he was in custody in another State. After his return to Illinois on February 22, 1971, he was tried on March 29, 1971.

In a remarkably similar case, *People v. Kelley* (1969), 105 Ill. App.2d 481, 244 N.E.2d 818, we find that the defendant there was arraigned in August of 1964, he made bond, the bond was forfeited, and a bench warrant issued. However, in *Kelley* the defendant testified he was restrained in a Denver jail from May, 1965, until January, 1966, and was then sent to the Federal penitentiary at Leavenworth. On August 26, 1966, the defendant wrote a letter to the Clerk and said

> "* * * that he was ready for trial, * * * 'and available through writ of Habeas corpus ad prosequendum' * * *."

Kelley was returned to Illinois on October 25, 1966. The defendant in *Kelley* contended that his constitutional right to a speedy trial should have been measured from the time the "detainer" was placed on him in the Federal penitentiary at Leavenworth. The court in *Kelley* stated, in citing Ill. Rev. Stat. 1965, ch. 38, par. 103—5, that:

> "* * * Such statute requiring trial within 120 days is applicable to persons imprisoned in Illinois. People v. Terlikowski, 83 Ill. App.2d 307, 227 N.E.2d 521 (Third Dist. 1967).
>
> * * * In The People v. Moriarity, 33 Ill.2d 606, 213 N.E.2d 516, it was held that a delay of ten months in bringing the defendant to trial after he was located in another state was not so oppressive as to amount to a denial of speedy trial. In Terlikowski, a delay of seven months was found not to be a constitutional denial of speedy trial."

Therefore, under the facts in the instant case, the defendant has no statutory right under section 103—5,* *supra,* to demand and be granted

---

* Ill. Rev. Stat. 1969, ch. 38, sec. 103—5, Speedy Trial
    "(a) Every person *in custody in this State* for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by defendant * * *"

trial within any specified length of time when he was outside the State of Illinois in the custody of the Federal authorities. As counsel for the State pointed out, section 9 of the Bill of Rights of the Illinois Constitution was enacted for the purpose of protecting the defendant from arbitrary and oppressive delays by the State. The supplementing of that constitutional provision by section 103—5 of chapter 38 of the Criminal Code was enacted for the purpose of implementing that constitutional safeguard. Here, the defendant by his own act caused the delay. It would be a sham indeed if this constitutional safeguard were so twisted that a defendant released on bond, who commits at least one other criminal offense, is incarcerated by the Federal authorities, could then contend that he was entitled to a "speedy trial" in Illinois while he was awaiting trial for the Federal offense in another jurisdiction. In *People v. Littlejohn* (1970), 130 Ill.App.2d 1064, 266 N.E.2d 358 at 363, the court stated:

> "It is also to be noted that the defense claims the denial of the right to a speedy trial but asserts no actual prejudice as a result of the delay. In People v. Tetter, 42 Ill.2d 569, 250 N.E.2d 433 (1969), the Illinois Supreme Court lists the four relevant factors for consideration of a claim of denial of the constitutional right to a speedy trial. They are (1) the length of the delay, (2) the reason for the delay, (3) prejudice to the defendant, and (4) waiver of right. Time alone will not establish a violation of the right to a speedy trial. We find that when viewed in the totality of these factors the defendant has not been denied his right to a speedy trial. We also point out that the time period from September 19, 1966, the date of the defendant's arraignment in Illinois, to April 20, 1967, the date on which the motion to dismiss was made, a delay of obviously more than 120 days, was caused by defendant's failure to show up in court on more than one occasion, which subsequently resulted in his being charged with bail jumping."

■■ The last contention of the defendant is that his sentence was excessive and improperly imposed for two offenses. The defendant was sentenced for both forgery and theft arising out of the same transaction. The trial court imposed sentences on each count to run concurrently. This court is of the opinion that only the greater sentence should be imposed, *i.e.,* the sentence of 10-14 years on the forgery count. As we have indicated in *People v. Johnson* (1967), 79 Ill.App.2d 226, 223 N.E.2d 860, it was formerly considered proper to impose sentence on both counts if the sentence ran concurrently rather than consecutively. However, the Supreme Court in *People v. Schlenger* (1958), 13 Ill.2d 63, 147 N.E.2d 316, held that a second sentence might prejudice the parole rights of the de-

fendant even if it ran concurrently. As we said in *Johnson, supra,* at page 865:

"\* \* \* In such cases, the only sentence to be imposed should be for the greater offense charged in the indictment. [Citations.] \* \* \*."

The argument of defendant that the sentence of 10-14 years to run consecutively to his previously imposed Federal sentence is excessive is without merit. While rehabilitation of each defendant shall be one of the factors in imposing sentence, examination of the record herein indicates that the rights of society must here transcend the factor of rehabilitation. It is difficult to ascertain from the record how many charges are still pending against this defendant in both the Federal and State courts, said defendant having operated under at least eight aliases. While on bail for the instant charge he committed an armed robbery. The judgment of the court therefore in imposing a sentence of 10-14 years for forgery to run consecutively to the Federal sentence under the facts of this case is not excessive.

We therefore affirm the conviction and judgment on count one for forgery and reverse the conviction and judgment on count two charging theft.

Judgment affirmed on first count, reversed on second count.

ABRAHAMSON and T. MORAN, JJ., concur.