THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREDDIE BROWN *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 78-1532

Opinion filed January 16, 1980.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Ellen M. Flaum, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendants, Freddie Brown, Jr., and Sanford Jackson, were jointly indicted and convicted of three counts of armed robbery, three counts of aggravated battery, and one count of unlawful use of weapons. Defendants contend that the actions of the trial court deprived them of the effective assistance of counsel. Further, they deny that their actions

constituted a waiver of counsel and claim that the trial court's comments regarding their absence from the courtroom constituted reversible error. Defendants also contend that they were denied a fair trial by the court's failure to advise them of their right to tender instructions or to object to those tendered by the State and given by the court. They specifically object to instructions pertaining to the concept of accountability as it applied to the charge of unlawful use of weapons. Defendants also assert that they were not proved guilty beyond a reasonable doubt on the accountability charge. Two final issues are raised for review, that the prosecutor's closing argument and the presence of 15 armed guards in the courtroom denied them a fair trial. Since the facts pertinent to the trial itself, rather than to the evidence regarding defendants' crimes, provide the basis for most of defendants' assertions, those facts are set out below.

At defendants' arraignment on June 17, 1977, following their indictment on the above charges, the court explained the arraignment procedures in response to a request by one of the defendants and asked if they would be represented by counsel. One defendant, unidentified in the record, informed the court that his "wife is supposed to get me a lawyer next week" and the other defendant, also unidentified, responded "the same thing." When the court inquired if defendants desired a continuance to secure counsel or wished the public defender to represent them, each replied that he wanted his own lawyer. They were granted a two-week continuance to July 1, 1977, to obtain such counsel.

On July 1, they appeared without privately retained counsel. The public defender informed the court that although the defendants might seek other counsel at a later time, they were assigned to her office during the arraignment.

On September 16, after the public defender and State's Attorney agreed to a continuance, defendants objected, with Jackson stating that both of them wanted the "transcripts and evidence." Jackson also wanted to know what the charges were. The court advised defendants to let their lawyer handle the case and told them that they had the right to fire her if dissatisfied and to represent themselves. Jackson replied that they would do that at this time. The court recommended against such an action and warned that it would be unwise since they had no qualifications. The court then stated that the case would be set for trial and defendants would represent themselves. Jackson objected and said that the fact that they wanted to discharge the public defender did not mean that they wanted to represent themselves.

After a conference with the public defender, defendants apologized to the court and requested another continuance to secure private counsel. The court granted the continuance, discharged the public defender, and once again informed defendants that they were representing themselves.

The court then told defendants that the public defender would be reappointed at their request.

On October 14, one of the defendants stated that the lawyer they contacted "didn't show." A *pro se* written motion for a bar association attorney was then filed. When the court denied the motion, defendants protested, explaining that the public defender had not brought them the discovery or police reports. However, the court informed defendants that unless they retained private counsel, their choices were limited to accepting the public defender or representing themselves. Defendants were advised to discuss the matter with the public defender. Soon thereafter, the public defender informed the court that defendants had agreed to her reappointment.

On February 2, 1978, the public defender advised the court that defendants were ready for trial but she had been unable to reach the private attorney that Brown had said would represent him. The case was continued on the court's motion to February 6. On that date the public defender asked to withdraw and stated that since the defendants refused to talk to her, she could not represent them. The defendants renewed their motion for a bar association lawyer, giving as reasons the public defender's failure to file the motions they requested and her general lack of cooperation. The court once again asked if the defendants wanted to fire the public defender. Brown and Jackson replied affirmatively, but insisted that they did not intend to represent themselves. As to this refusal to proceed *pro se* the court stated: "[E]ntirely up to you, you can sit here while the State presents their case, if you wish. You have that privilege."

At trial, the court informed defendants that an assistant public defender had been appointed to answer questions and give any requested assistance. Defendants reiterated that they did not intend to go to trial without an attorney and, once again, requested a bar association attorney.

The standby attorney stated that all discovery had been tendered to defendants and that they had refused to speak to him. After defendants again refused representation by the public defender, the court closed the discussion with the statement, "you're going to have to learn the hard way. It's entirely up to you. Like I say, when you come out here, we'll have a jury the next time you come out."

After a brief recess, defendants refused to return to the courtroom. The trial judge went to the lockup and informed defendants that they could return to the courtroom at any time, but in the interim, he was going to proceed with selecting a jury and hearing the evidence. After another recess, the trial judge once again asked defendants to return to the courtroom; the defendants still refused to leave the lockup.

When the trial began the day after the jury had been selected and present, the court advised defendants that they could make opening

statements. Brown said, "Opening statement for what?" and the judge suggested a consultation with public defender Kunz. Following that conversation, brief "opening statements" were made by each defendant addressed not to the merits of the case but to their objections to proceeding to trial without a lawyer of their own choosing.

Before the State could call its first witness, both defendants commenced verbal attacks on the judge, calling him a racist and demanding an attorney. When defendants persisted in their disruptive behavior both before and after a short recess, in the face of the judge's warnings that their behavior might cause them to be removed, defendants were held in contempt and, finally, led from the courtroom.

The State presented substantial evidence, including identification testimony by two eyewitnesses. In addition to the eyewitness testimony, two policemen described their response to the alarm and their apprehension of the defendants a short distance from the scene of the crime, in possession of firearms and the proceeds of the robbery. Defendants returned to the courtroom prior to the police testimony and sat quietly through the State's direct examination.

The court asked defendants if they wished to question the witness but both defendants responded that they were not qualified and would like to have an attorney. The court directed the witness to leave the stand. Following testimony by the second policeman, defendants were again asked if they had any questions. The response was the same. That witness was also excused and the jury was removed from the courtroom.

Thereafter, the jury instructions were tendered to defendants and all the State's exhibits were admitted into evidence. The State then rested its case. For the first time in the trial, the public defender initiated participation in the defense; he moved for a mistrial on Jackson's behalf. The court asked Jackson if he wished the public defender to speak on his behalf. Jackson responded that he did not trust Kunz and refused to answer yes or no since he did not understand the proceedings. The court allowed the public defender to present the motion, which was based on the earlier described "opening statement" by Brown. In that statement, Brown had revealed the recommendation of another public defender that the defendants plead guilty (plea bargain). When the State's Attorney pointed out Jackson's subsequent adoption of Brown's statement, the judge denied the mistrial motion.

After the jury returned, defendants were asked if they wished to present any evidence. Brown replied just as before, stating he wanted a lawyer and did not understand the proceedings. Jackson concurred.

Following the State's argument, defendants offered brief closing statements which reiterated that they were not lawyers and could not

represent themselves. The jury found the defendants guilty of armed robbery, aggravated battery, and unlawful use of weapons.

The public defender, assisted by the office of the State Appellate Defender, was appointed, with the agreement of defendants, to prepare post-trial motions. These were denied. The old and the new sentencing acts were explained to defendants by the appellate defender and the judge. When defendants stated that they did not understand the implications of the two acts, the judge (as earlier suggested by defendants' attorney) sentenced them under the old act. The court sentenced Brown to 3 to 9 years for aggravated battery and unlawful use of weapons and 15 to 25 years on each of two counts of armed robbery. Jackson was sentenced to 2 to 6 years for aggravated battery and unlawful use of weapons and 12 to 25 years on each of two counts of armed robbery.

■■ ■ Two procedures, one based on statute and the other on case law, have developed to provide the trial court with guidance when it is faced with a demand for appointed counsel of defendant's own choosing. Where defendant is indigent, he is entitled to appointment of a public defender to represent him. If however defendant shows good cause or possible prejudice, the court may appoint a bar association attorney. (Ill. Rev. Stat. 1975, ch. 38, par. 113—3(b); Ill. Rev. Stat. 1975, ch. 34, par. 5604.[1]) When defendant continues to insist on counsel other than the public defender, yet cannot afford to retain private counsel and has not shown sufficient cause for other appointed counsel, the court is faced with a dilemma—whether to force the defendant to trial without any attorney, in practical effect a waiver of the right to be represented by counsel at trial, or whether to refuse to allow the public defender to withdraw, thereby providing defendant with effective, if perhaps unappreciated, assistance of counsel. We feel that either of these actions, if accompanied by applicable statutory safeguards, would be sufficient to afford the defendant his rights. The necessary inquiry, therefore, pertains to whether the statutory provisions concerning waiver were followed or whether the public defender was prevented from withdrawing in order to provide defendants with representation at trial.

It is well established that in order to have an effective waiver of counsel, more than a routine inquiry is necessary. (*E.g., Von Moltke v. Gillies* (1948), 332 U.S. 708, 724, 92 L. Ed. 309, 321, 68 S. Ct. 316, 323; *People v. French* (1966), 67 Ill. App. 2d 462, 214 N.E.2d 604.) Every

---

[1] At the time of the initial request by defendants for appointed counsel other than the public defender, these statutes were operative. However, effective October 1, 1977, the statututes were amended by Public Act 80-846 to provide that where the defendant requests and where the court finds that public defender appointment would prejudice the rights of the defendant, the court shall appoint counsel other than the public defender. See Ill. Rev. Stat. 1977, ch. 38, par. 113—3(b); Ill. Rev. Stat. 1977, ch. 34, par. 5604.

reasonable presumption will be entertained against a finding of waiver where there are insufficient facts to substantiate a knowing and intelligent waiver. (*United States v. Curtiss* (2d Cir. 1964), 330 F.2d 278; *Carnley v. Cochran* (1962), 369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884; *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 372 N.E.2d 1014.) Supreme Court Rule 401(a) was designed to provide simple, minimum guidelines for advising a defendant of the right to counsel and the implications of the trial before him. It was intended to forestall the claim presented in the instant case by insuring that the defendant was advised, on the record, of all pertinent facts before his choice to proceed to trial without a lawyer became final. Rule 401(a) provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. Rev. Stat. 1975, ch. 110A, par. 401(a).

As was stated in *People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140, 308 N.E.2d 111, "[t]he purpose of Supreme Court Rule 401(a) is to provide a procedure which will eliminate any doubt that a defendant understands the nature and consequences of the charge against him before a trial court accepts his waiver of the right to counsel; it is a procedure that precludes a defendant from waiving assistance of counsel without full knowledge and understanding."

Defendants contend that the trial court did not personally inform them of the nature of the charges against them, failed to make a determination on their understanding of the charges, and never advised them of the minimum and maximum penalties which could be assessed. The State asserts that defendants knew and understood the charges against them. The evidence on this point is not clear-cut and at best must be pieced together from hearing to hearing. It appears that copies of the indictment were furnished defendants, but even though the first public defender represented that she had given defendants copies of the police reports in early fall, later portions of the record refer to the police reports as having been given only shortly before trial. Nevertheless, Rule 401(a) mandates that the trial judge personally inform defendants not only of the

explicit charges but of the nature of those charges. It further dictates that the court determine that the defendant understands those charges. We can find no explicit attempt to explain the charges or the nature of the charges to defendants here. The State cites *People v. Jackson* (1978), 59 Ill. App. 3d 1004, 376 N.E.2d 685, for the proposition that perfect conformity with Rule 401(a) is not required. However in *Jackson*, defendant had a lengthy record and throughout the trial demonstrated an intricate knowledge of courtroom procedures. He was also given a psychiatric examination which resulted in a professional finding that he understood the charges pending against him. The court indicated that a review of his conduct of the trial showed his familiarity with criminal procedure. Defendants in the instant case do not show the sophisticated knowledge of the defendant in *Jackson*. Further, and even more importantly, in *Jackson*, defendant participated in a conference with the State's Attorney and court on the record regarding punishment and possible consequences of a guilty plea.

Even if we were to infer that defendants knew of the charges against them in the manner mandated by Rule 401(a), there has been no showing that defendants were advised of the maximum and minimum penalties which could be imposed by law. The State concedes that defendants were probably not advised of the penalties but suggests that this does not mean that defendants were not aware. They cite *People v. Smith* (1975), 33 Ill. App. 3d 725, 338 N.E.2d 207, for the proposition that the failure to admonish was at most harmless error. However, as in *Jackson*, the defendant in *Smith* stated that he had studied law informally for 12 years and demonstrated an ability to use trial tactics in his favor. He made no claim that he was unaware of the potential penalties, only that he was not advised. Once again, in light of the *Smith* level of legal sophistication, the appellate court found the failure to admonish was harmless. See also *People v. Black* (1979), 68 Ill. App. 3d 309, 385 N.E.2d 899.

In the case at bar, defendants repeatedly alleged that they did not know or understand the charges or the procedures. Thus the *Jackson-Smith* rationale, which excuses the explicit mandate of Rule 401 where there is a high level of legal sophistication is inapplicable to the instant case.

Two distinct constructions of the requirements of Rule 401 have developed in the appellate courts. One strain holds that substantial compliance with Rule 401 is enough (*People v. Black*); the other requires rigorous compliance with the admonitions contained therein. *People v. Jones* (1976), 36 Ill. App. 3d 190, 343 N.E.2d 644.

This first line of cases developed from the situation presented by a defendant who, upon pleading guilty, received the warnings requisite to both Rules 401 and 402. On appeal, the defendant challenged compliance

with Rule 401(b), waiver of indictment, which occurred prior to his plea of guilty. (*E.g., People v. Allen* (1975), 25 Ill. App. 3d 800, 323 N.E.2d 57.) The cases reasoned that even though the waiver may have been procedurally defective in the strictest sense of Rule 401(b), the defendant was apprised of the same factors prior to the guilty plea (see Ill. Rev. Stat. 1977, ch. 110A, par. 402), and thus it was harmless error to have neglected the earlier warnings. This reasoning was buttressed with the argument that procedural defects in the waiver of indictment are waived by a guilty plea. (*People v. Nunn* (1975), 29 Ill. App. 3d 399, 404, 331 N.E.2d 8.) "Thus, regardless of the sufficiency of the admonitions under Supreme Court Rule 401 at the phase of the proceedings in which both defendants waived the right to be indicted, their subsequent voluntary pleas of guilty to the offense * * * waived any irregularities in the waiver of indictment phase * * *." (*People v. Bassett* (1975), 25 Ill. App. 3d 927, 932, 323 N.E.2d 607.) Later cases confronting the above described situation added to the stated rationale by reasoning that since provisions concerning both waiver of indictment and guilty pleas were at one time contained in the same Supreme Court Rule (see Ill. Rev. Stat. 1969, ch. 110A, par. 401), the substantial compliance standard of Rule 402 could be grafted on Rule 401(b). These cases cited our supreme court, who in *People v. Dudley* (1974), 58 Ill. 2d 57, 60-61, 316 N.E.2d 773, and *People v. Krantz* (1974), 58 Ill. 2d 187, 192, 194-95, 317 N.E.2d 559, had simply reiterated that the language of Rule 402 specified a substantial compliance standard for appellate review of the sufficiency of guilty plea admonitions. However, this first line of cases, using the above delineated rationale, held that since the trial court's failure to comply fully with Rule 402 did not require reversal, the same result would attend for Rule 401(b), waiver of indictment. (*E.g., People v. Roberts* (1975), 27 Ill. App. 3d 489, 493, 326 N.E.2d 116.) At this point in the evolution of the cases, the courts stressed that the waiver of indictment was only a technical procedure whose absence did not detract substantially from the defendant's right to a fair trial. (Although the Illinois Constitution of 1870 provided for a right to indictment in article 2, section 8, the Illinois Constitution of 1970 allowed for the alternative procedures of either indictment or a preliminary hearing to establish probable cause in article 1, section 7.) Perhaps even more importantly, these cases emphasized that the defendant was represented by competent counsel and even testified to his discussions with his attorney pertaining to waiver of indictment. (*E.g., People v. Nunn* (1975), 29 Ill. App. 3d 399, 404, 331 N.E.2d 8.) The final step in this uncoiling line of cases was *People v. Sifers* (1975), 29 Ill. App. 3d 428, 430, 331 N.E.2d 589. It summarily extended the substantial compliance standard explicitly stated in Rule 402 to Rule 401(a), waiver of attorney,

without any reasons for such a drastic departure from the specific language of Rule 401(a). Once again, Rule 401(a) states:

"Any waiver of counsel shall be in open court. The court *shall not permit* a waiver of counsel by a person * * * without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

* * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a).)

In contrast, Rule 402 provides:

"In hearings on pleas of guilty, there must be *substantial compliance* with the following:

* * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110A, par. 402.)

In conflict with this first line of cases, a different strain has developed which gives full recognition to the contrasting standard for making the admonitions set down by Rule 401 and Rule 402. These cases hold that more than routine inquiry is necessary to comply with the simple preventive measures mandated by Rule 401(a). (*People v. Bobo* (1975), 33 Ill. App. 3d 274, 276, 337 N.E.2d 227; *People v. Greene* (1975), 31 Ill. App. 3d 147, 333 N.E.2d 661 (abstract).) This reasoning is validated by the recent revision of the Supreme Court Rules, which removed waiver of indictment from Rule 401 while retaining the specific mandatory language for giving the admonishments for waiver of counsel. (Ill. Rev. Stat., 1978 Supp., ch. 110A, par. 401, as amended effective November 1, 1978, 73 Ill. 2d Rule 401.) As the revised committee comments state, "In 1975, the Code of Criminal Procedure of 1963 was amended to abolish the requirement of indictment, and in 1978, to reflect this change, paragraph (b) of Rule 401 (58 Ill. 2d R. 401) was rescinded * * *." (73 Ill. 2d R. 401 (Committee Comments).) Waiver of indictment has thus been inessential since the 1975 amendment which allowed the prosecutor to proceed alternatively by indictment, or by information or complaint following a preliminary hearing or waiver thereof. See Ill. Rev. Stat. 1975, ch. 38, par. 111—2, as amended by Pub. Act 79-671, §1, eff. Oct. 1, 1975.

In contrast, there has been no such dilution of the Sixth Amendment right to counsel which Rule 401(a) seeks to preserve. Those cases which have followed the mandate of Rule 401(a) have required that the record affirmatively demonstrate that defendants were given those warnings which our supreme court deemed essential to a decision pertaining to representation. (See *People v. Templeton* (1978), 60 Ill. App. 3d 711, 377 N.E.2d 228; *People v. McMurray* (1977), 55 Ill. App. 3d 581, 371 N.E.2d 46; *People v. Jones* (1976), 36 Ill. App. 3d 190, 343 N.E.2d 644; see also *People v. Hessenauer* (1970), 45 Ill. 2d 63, 67-68, 256 N.E.2d 791; *People v.*

*Thompson* (1977), 47 Ill. App. 3d 346, 361 N.E.2d 1169.) To the extent that the standard of review for those cases concerning waiver of indictment under Rule 401(b) may conflict with those cases interpreting waiver of counsel under Rule 401(a), we choose to accept the more rigorous requirements explicitly set out in the Supreme Court Rule and applied in the *Templeton-McMurray* cases. We believe these cases correctly reflect the constitutional foundation upon which Rule 401(a) rests. See generally *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006.

■■ Accordingly, since the requisite warnings were not given, and the record does not affirmatively disclose that defendants were aware of the information contained therein, there was no effective waiver of counsel under Rule 401(a) by defendants.

It remains to be decided whether the standby appointment of an assistant public defender was a sufficient measure to provide the defendants with effective assistance of counsel in the face of their repeated insistence that they were not going to trial *pro se* and in the absence of complete Rule 401(a) waiver admonishments. The case at bar is distinguishable from those cases in which a defendant, after deciding to proceed *pro se*, is either removed from the courtroom for disruptive behavior, or is recognized as incompetent to conduct his defense, and the court then directs previously appointed advisory counsel to take a more active role in the defense. (See *People v. Allen* (1967), 37 Ill. 2d 167, 226 N.E.2d 1, *cert. denied* (1967), 389 U.S. 907, 19 L. Ed. 2d 225, 88 S. Ct. 226, *upheld on collateral review in Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057; *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Bell* (1977), 49 Ill. App. 3d 140, 363 N.E.2d 1202; *People v. Rose* (1972), 7 Ill. App. 3d 374, 377, 287 N.E.2d 195.) Here, there was no initial choice to proceed *pro se*. Instead defendants went to trial without counsel and without the warnings of Rule 401(a) that would have satisfied the statutory requirements for waiver of the assistance of an attorney. (*Cf. People v. Hubbard* (1966), 77 Ill. App. 2d 14, 23, 222 N.E.2d 145 ("[I]f a defendant *knowingly* rejects properly appointed counsel, he will then be required to defend himself despite protestations that he does not wish to do so.") (Emphasis added).) Accordingly, absent defendants' decision to proceed *pro se* or to waive counsel, the trial court should have followed the course suggested in *People v. Johnson* (1974), 24 Ill. App. 3d 152, 159-60, 320 N.E.2d 69. In *Johnson*, we addressed a strikingly similar situation and held that until the defendant is represented by other counsel, the public defender cannot withdraw, since that would leave an indigent defendant without means to obtain other counsel or statutory backing to demand appointment of private counsel.

■ In the instant case assistant public defender Kunz was appointed only

in a standby role and indeed initiated no action to present defendants' case until his motion for a mistrial after the State's case in chief. His appointment followed the court-allowed withdrawal of a different public defender who was actively representing defendants. We cannot find that the inactive, standby appointment provided defendants with adequate representation of counsel. Neither were they given the Rule 401(a) admonishments which would have allowed a finding of waiver of counsel. Thus, on this basis we must reverse and remand to the trial court.

Defendants have presented several other issues for our consideration. In the light of our above holding, we find that there is no need to address the other contentions. However, those issues regarding the accountability/gun possession charge, being separate and distinct from the one upon which we reversed, must be addressed.

The defendants were convicted of the offense of unlawful use of weapons in that they did knowingly possess a shotgun with a barrel less than 18 inches in length. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(7).) Defendants argue that the instruction on constructive possession under section 24—1(c) which contains its own definition of accountability should have been given to the jury rather than the general accountability instruction that was given. However, the State in this case did not charge defendants under the constructive possession statute (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(c)), which reads as follows:

> "The presence in an automobile other than a public omnibus of any weapon, instrument or substance referred to in Subsection (a)(7) is prima facie evidence that it is in the possession of, and is being carried by, all persons occupying such automobile, at the time such weapon, instrument or substance is found, except under the following circumstances: (i) if such weapon, instrument or instrumentality is found upon the person of one of the occupants therein; or (ii) if such weapon, instrument or substance is found in an automobile operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver."

Instead, defendants were charged simply with knowing possession. Accordingly, if there was sufficient evidence presented at trial to prove knowing possession, then defendants were properly found guilty.

With respect to defendant Brown, the evidence adduced at trial was sufficient for the jury to find unlawful use of weapons absent any reference to accountability. One of the victims, Angelo Manet, testified that Brown had a big gun "like a sawed-off shotgun." He also identified People's Exhibit 17, the shotgun recovered from the vehicle in which defendants were arrested, as "looking like the same gun" he observed in Brown's possession during the robbery. Arresting Officer Stampnick

testified that the shotgun was found lying on the front seat of the vehicle in which Brown was seated on the driver's side. Such evidence, if believed by the jury, was sufficient to sustain a knowing possession charge.

■■ With regard to defendant Jackson, the State proceeded on an accountability theory much on the same basis as Brown was held accountable for the aggravated battery committed by Jackson during the robbery. Thus the regular accountability instruction was properly given. Since the convictions were not premised on the constructive possession statute and the jury was not instructed on any presumption arising out of this statute, we feel that defendants' claim relative to this statute is irrelevant to their conviction under the knowing possession statute.

For the foregoing reasons, despite the overwhelming evidence of defendants' guilt, we must reverse and remand to the trial court for a new trial in accord with the views expressed herein.

Reversed and remanded.

PERLIN, P. J., and DOWNING, J., concur.