THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT WOODS, a/k/a Morris Jackson, Defendant-Appellant.

First District (5th Division)   No. 79-437

Opinion filed May 16, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a jury trial, defendant was convicted of theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) and sentenced to a prison term of seven years. On appeal, he contends: (1) that he did not knowingly and intelligently waive his constitutional right to be represented by counsel; (2) he was denied

effective assistance of counsel; (3) he was denied his constitutional right to assistance of counsel of his choice; (4) he was denied due process by the trial court's failure to conduct a hearing on his fitness to stand trial and be sentenced; (5) he was denied his constitutional right to confrontation and cross-examination where hearsay evidence was relied on to supply proof of an essential element of the offense; and (6) he was not proven guilty of theft beyond a reasonable doubt. We reverse and remand for a new trial because defendant did not knowingly and intelligently waive his constitutional right to be represented by counsel.

At about 8:30 p.m. on October 3, 1977, Officer Charles Brown observed a 1977 Pontiac Trans Am, which was headed northbound on Lake Park, going through a red light at 53rd Street. He turned on the emergency equipment in the automobile in which he was travelling and pursued the car. At 47th Street, the car stopped at a traffic signal and Brown, using his loud speaker, ordered the driver of the car to pull over to the side of the road. The car crossed 47th Street and eventually pulled over to an empty parking spot in the 4600 block of Lake Park. As Brown approached the car, the driver turned around and Brown was able to see his face. Before Brown was able to reach the driver's door, the car quickly pulled away from the curb. Brown then got back into his vehicle, called for assistance, and began chasing the fleeing car. He chased the car for about 20 minutes, up and down side and main streets, travelling at speeds of up to 90 miles per hour. Eventually the fleeing car hit an unmarked police car on Cottage Grove and came to a halt in a vacant lot. Brown then again went up to the car and this time ordered the driver to step out of the car. When he did, Brown recognized the driver as the same man he had seen in the car in the 4600 block of Lake Park, and, at trial, identified the man as defendant. The driver identified himself as Robert Woods and told Brown that he did not have a driver's license. As Brown looked into the car, he noticed a temporary registration permit on the inside windshield. The permit contained the name David Sarvedra, not Robert Woods. Later that evening, Brown called Sarvedra. After the call, he charged defendant with possession of a stolen vehicle.

David Sarvedra identified the 1977 Pontiac Trans Am as a car which he had recently purchased from a car dealer at 5300 North Broadway. He was the record owner of the car. He said that late in September of 1977, he had returned the car to the dealer for servicing. He said that he did not know defendant, never gave him permission to drive the car, and never gave anyone else permission to allow defendant to drive the car. He also said that his uncle, who had co-signed for the car but who was not an owner of it, did not give defendant permission to use the car.

Richard Hoby, a manager at the car dealership where Sarvedra purchased his car, stated that he was familiar with the employees of the

dealership and knew that defendant was not an employee there. He confirmed Sarvedra's statement that he returned his car for servicing, and stated that neither he nor any other employee of the dealership, to his personal knowledge, gave defendant permission to drive Sarvedra's car from the dealership.

OPINION

I

Defendant contends that the circumstances of this case were such that he was tried without assistance of counsel, even though he did not first knowingly and intelligently waive his constitutional right to be represented by counsel.

Defendant was arrested on October 3, 1977, and on October 13, he filed a *pro se* motion for appointment of a bar association attorney rather than the public defender. As grounds for the motion, defendant stated that assistant public defenders are assigned to courtrooms and not individual defendants and that an alleged report on the public defender's office indicated certain inadequacies in the office. The record contains no ruling on this motion. Notwithstanding this motion, on October 20, an assistant public defender filed an appearance on behalf of defendant. On December 20, the assistant public defender filed a discovery motion at the same time that he demanded trial. On December 28, while still demanding trial, defendant again filed a motion for appointment of a bar association attorney. On this occasion, the trial court denied his motion.

Defendant once again filed a motion for a bar association attorney on February 21, 1978. On this occasion, the assistant public defender, who had been assigned to represent defendant, also moved the court to allow him to withdraw as defendant's counsel in favor of a bar association attorney. He requested permission to withdraw because defendant refused to cooperate with him. During discussion of the motions, defendant told the court that he was a "Morrish American" and wished to observe "all rights of this United States Court." After discussion, the court denied defendant's motion, stating:

"You have the alternative, Mr. Woods, of representing yourself with the availability of a public defender in the event you wish to ask him any questions or you have the right to have Mr.—have a public defender represent you and in that event, I'd suggest that you do cooperate with the public defender.

The case is set for trial. If you want to get a private lawyer, the Court will give you time to get a private lawyer. But if you want the Court to appoint a lawyer—you have the public defender the County provides and pays and that's the attorney you're going to have."

After this statement, the assistant public defender informed the court that it would be impossible for him to adequately represent defendant. The court then asked how old the case was and, after being informed that defendant had been arraigned on November 17, 1977, asked defendant if he wished to represent himself. Defendant stated that he was not an attorney and did not want the public defender's office to represent him. The court then informed defendant that he would go to trial on that day and that he would either represent himself or allow the public defender's office to represent him. At this point, defendant asked the court if he could make a telephone call to a friend. When the assistant public defender asked if he wished to make the call to obtain an attorney, defendant stated that he was calling "someone." The court allowed the phone call, but told defendant that he was going to trial unless he obtained an attorney.

Later in the day on February 21, a jury was called and the court read the information to the prospective jurors, with defendant present. After this was completed, the court introduced the attorneys to the jurors. After introducing the assistant public defender as defendant's attorney, defendant informed the jurors that the assistant public defender was not his attorney and that he had not requested that he represent him. The assistant public defender then moved for a mistrial based on the comments of defendant. Despite the assistant public defender's protestations that he could not control defendant, the court denied the motion. After the denial, the State informed the court that the case had come up four or five times since the arraignment, and that on each occasion, defendant had demanded trial. Also, they informed the court that there were less than 14 days left in the term. The assistant public defender again moved the court to allow him to withdraw as counsel and explained that although it was true that defendant had consistently demanded trial, he had counseled him otherwise. The court did not grant the motion, but it did warn defendant against further outbursts and told him that he had a choice of representing himself, representing himself with assistance of the assistant public defender, or allowing the assistant public defender to conduct his defense. In response, defendant again told the court that he did not want the assistant public defender to represent him. The court then proceeded on to jury selection.

After the court tendered the first panel of jurors to the defense, the assistant public defender requested a sidebar at which he informed the court that defendant had threatened to again inform the jurors of his dissatisfaction with his representation if the assistant public defender exercised any preemptory challenges. The trial court then explained the jury challenges to defendant and told him that he could exercise the challenges. Defendant told the court that he understood his explanation

"somewhat" but that he would not exercise any challenges. He again told the court that he was not a lawyer but he was a Morrish American who stood for love, truth, peace, freedom and justice. He also explained to the court that he had gotten out of prison one year ago and had since become a minister. After defendant had concluded his statement, the assistant public defender told the court that he was also reluctant to exercise any challenges on defendant's behalf because it might be interpreted by a reviewing court as a waiver of rights or evidence of acquiescence by defendant. Nonetheless, when the court resumed jury selection, it again tendered the first panel to the defense. At that point, as he did again throughout the jury selection process, the assistant public defender declined to exercise any challenges because of "defendant's wishes that I not represent him." The court then briefly recessed jury selection to explain to the prospective jurors its reasons for appointing the assistant public defender despite defendant's wish that he not represent him. Afterwards, the court again asked the assistant public defender if he wished to exercise any challenges. He again answered that, pursuant to defendant's wishes, he would not exercise any challenges. Then, just as the court was about to swear in the first panel, defendant asked, and was granted permission to address the court. As defendant was doing so, the court interrupted defendant and told him that what he was saying could harm his case. Defendant responded that he merely wanted the truth to come out. After the court said that it too was interested in the truth, the assistant public defender again moved for a mistrial, and alternatively, for permission to withdraw or at least sit in an advisory capacity. The court denied the motions and stated, "He has already indicated he can't represent himself, so you're representing him." The first panel was then sworn in.

During selection of the remaining jurors, the assistant public defender informed the court that defendant had told him not to make an opening statement, cross-examine any of the State's witnesses, call any witnesses for the defense, or give a closing argument. The court said that it was up to defendant and continued on with the jury selection. Ultimately, 12 jurors were chosen, without any challenges by the defense, including one whose sister had her car stolen five years previously, another who had his car stolen 12 years previously, another who had a brother who was a police instructor, and another whose relative had recently gone to work for the State's Attorney's office.

Prior to opening statement, the trial court informed defendant of his rights during trial and offered an explanation of the various trial proceedings. It also told defendant that it believed that he was making a mistake "if he was relinquishing his right to counsel." The assistant public defender then again asked defendant if he wished his representation, and

the defendant responded that he stood "on the Fifth Amendment." Before the State commenced with its opening statement, it informed the court that there was a typographical error in the information and moved to correct it. Despite the assistant public defender's refusal to participate to the extent of objecting to the State's request, the court said that an objection had been raised and it overruled the objection. The assistant public defender then again told the court that defendant did not want him to do anything at trial. After defendant agreed with this statement, the court informed defendant that he had the right to fully perform as an attorney at trial. When defendant said that he did not understand this right, the court stated that it disbelieved him. The court also stated that it would be very careful concerning questions asked witnesses by the State and would object and rule where appropriate.

After the State gave its opening statement, the assistant public defender again informed the court that, in accordance with the wishes of defendant, he would not participate in the trial. Defendant then declined to give an opening statement. The State called three witnesses who the defense did not cross-examine, with the assistant public defender again stating on each occasion that he was not cross-examining pursuant to defendant's wishes. Defendant also declined an opportunity to cross-examine these witnesses. Before resting, the State sought to have two exhibits admitted into evidence, and the court allowed this request again without any participation by the defense. After the State rested, the defense asserted that it would not present any evidence. Then before the conference on jury instructions, the court explained the instruction conference and closing arguments to defendant. Despite this explanation, defendant refused to participate in the conference and stated that he did not understand the instructions. The court then decided to read the appropriate instructions into the record. While the court was reading the unsigned verdict forms into the record, defendant asked the court if the verdict forms meant that he had already been found guilty. The court explained that they did not and then ordered the parties to give closing arguments. For the first time during trial, defendant decided to participate and proceeded to give a totally inappropriate closing argument, replete with passages from scriptures. After arguments, the jury adjourned and ultimately returned a verdict finding defendant guilty of theft. Before sentencing, the assistant public defender again asked to withdraw and was again refused permission to do so. The assistant public defender then made motions in arrest of judgment and for a new trial. Both motions were denied.

Despite the trial court's statement that the assistant public defender was representing defendant and the minimal participation by him at trial, we think that it is clear from the record that, practically speaking,

defendant was tried without counsel. When a defendant is tried without counsel, we must carefully consider whether he or she has knowingly and intelligently waived the constitutional right to be represented by counsel. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) A waiver will not be presumed, and a trial judge should entertain every reasonable presumption against waiver. (*Boyd v. Dutton* (1972), 405 U.S. 1, 30 L. Ed. 2d 755, 92 S. Ct. 759.) Supreme Court Rule 401(a)(Ill. Rev. Stat. 1977, ch. 110A, par. 401(a)) sets forth certain guidelines to assure that a defendant has knowingly and intelligently waived assistance of counsel. (*People v. Jones* (1976), 36 Ill. App. 3d 190, 343 N.E.2d 644.) According to Rule 401(a), before a trial court accepts a waiver it should address the defendant in open court and inform him of and determine that he understands:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

(Ill. Rev. Stat. 1977, ch. 110A, par. 401(a).)

Except in those cases where it appears that defendant has a high level of legal sophistication (see, *e.g.*, *People v. Jackson* (1978), 59 Ill. App. 3d 1004, 376 N.E.2d 685), strict compliance with Rule 401(a) is required. *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374.

In reviewing the record in this case, we cannot say that defendant demonstrated a high level of sophistication in legal matters. In fact, we believe that the record demonstrates that he was not capable of representing himself. Aside from defendant's own statements to that effect and the trial court's own acknowledgements of these statements, the record is replete with examples of defendant's inability to understand the legal proceedings and to participate in those proceedings in a meaningful fashion. Given such examples, it would be difficult to say that defendant possessed a level of legal sophistication which warrants less than strict compliance with Rule 401(a). See *People v. Brown.*

■■ Since defendant did not have the requisite legal sophistication, the trial court was required to strictly comply with Rule 401(a). The record does not affirmatively reveal that defendant was given all the requisite warnings. (*People v. Myles* (1980), 83 Ill. App. 3d 843, 404 N.E.2d 385; *People v. Brown.*) Although defendant was adequately apprised of his right to appointed counsel, he was not adequately apprised of the nature of the charge against him or the potential penalties for conviction on such a charge. It is true that defendant was present for a reading

of the information but, as was noted in *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374, the trial court must personally inform defendant not only of the charge and the nature of the charge, but also it must determine that defendant understands the charge. The record does not disclose any effort to make such a determination. Also, the record does not disclose any effort by the trial court to inform defendant of the potential sentencing for theft. Contrary to a position taken by the State, we cannot assume that defendant knew of the severity of the charge by the fact that defendant had been previously advised by an attorney who had filed a discovery motion. It must be affirmatively shown on the record that defendant was informed of and understood the potential sentence for the crime charged. (*People v. Brown.*) Since defendant was not properly warned in compliance with Rule 401(a), we are compelled to reverse the judgment of the trial court and remand for a new trial.

## II

■■ Because of our finding that defendant was, in effect, proceeding without counsel, we need not consider his contentions that he was denied effective assistance of counsel and his right to assistance of counsel of his choice. We note, however, that an indigent defendant is not entitled to appointment of counsel other than the public defender absent a showing that appointment of the public defender would prejudice his rights. (Ill. Rev. Stat. 1977, ch. 38, par. 113—3(b); ch. 34, par. 5604.) Defendant's petition for appointment of a bar association attorney was based on the fact that an assistant public defender is assigned to a courtroom and not a specific defendant and on an alleged report claiming certain inadequacies in the public defender's office. We find that these reasons were insufficient to warrant appointment of an attorney other than the public defender in the present case because they do not show how defendant would be specifically prejudiced.

■ We find no merit to defendant's contention that he was denied due process by the trial court's failure to conduct a hearing on his fitness to stand trial and be sentenced. A fitness hearing is required when a *bona fide doubt* of defendant's fitness to stand trial or be sentenced is raised. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1.) But, no bona fide doubt has been raised in this case. Prior to trial, a psychiatric examination was conducted on defendant and he was found to be fit to stand trial. Before sentencing, another psychiatric examination of defendant was conducted and he was found to be fit to be sentenced. Despite defendant's protestations that his conduct during trial, including his failure to cooperate with the public defender, raises a bona fide doubt of his fitness, we cannot say that his conduct when viewed in light of the results of the

psychiatric examinations was sufficient to raise a bona fide doubt of his fitness. *People v. Smith* (1969), 44 Ill. 2d 82, 254 N.E.2d 492.

■■ We find no merit to defendant's claim that hearsay evidence was relied on to prove that the control exerted by him over Sarvedra's car was unauthorized. He argues that Hoby's statement that defendant was not an employee of the car dealership, Hoby's statement that no employee of the dealership gave defendant permission to remove Sarvedra's car from the premises, and Sarvedra's statement that his uncle did not give defendant permission to use the car were inadmissible hearsay. We disagree that Hoby's statements constituted inadmissible hearsay. His statements were based on his *own* personal knowledge and as such did not constitute hearsay. Sarvedra's statement, however, was not based on his own personal knowledge. It could be interpreted as an out-of-court statement offered to prove the truth of the matter asserted. Yet, the court's admission of this statement was harmless because Sarvedra's uncle did not own the car and there was no other evidence that he could authorize use of Sarvedra's car. Also, the record contains sufficient other competent evidence that defendant was unauthorized to use the car. See *People v. Plair* (1977), 51 Ill. App. 3d 75, 366 N.E.2d 410.

■■ Finally, we find no merit to defendant's claim that he was not proven guilty of theft beyond a reasonable doubt. Specifically, he points to the absence of evidence of the circumstances under which he came into possession of the vehicle, and states that without such evidence the jury would have had to speculate that the vehicle came into his possession under other than innocent circumstances. We disagree. Theft of an automobile may be established by circumstantial evidence. (*People v. Donald* (1971), 132 Ill. App. 2d 598, 270 N.E.2d 85; *People v. Bullock* (1970), 123 Ill. App. 2d 30, 259 N.E.2d 641.) And, as was noted in *People v. Donald* (1971), 132 Ill. App. 2d 598, 600, 270 N.E.2d 85, 86, "[i]t is well established in Illinois that the recent, exclusive, and unexplained possession of a stolen vehicle by the defendant is, in and of itself, sufficient to prove him guilty beyond a reasonable doubt." We believe that the undisputed facts in this case were sufficient to convict defendant of theft beyond a reasonable doubt. The evidence shows that Sarvedra, the owner of the car, did not give defendant permission to use his car and did not give anyone else permission to allow defendant to use his car. Hoby, the manager of the car dealership where Sarvedra's car was returned for servicing, said that defendant did not work for the dealership and that he did not give him permission, nor did anyone else *to his knowledge* give him permission to use Sarvedra's car. Sarvedra and Hoby's testimony alone creates the inference that defendant was exerting unauthorized control of the car, as is required in the crime of theft. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1.) Additionally, evidence that defendant

was seen driving the car more than 12 miles from the car dealership and that he attempted a 20-minute high-speed flight from Officer Brown and other officers further supports this inference and defendant's consequent guilt. *People v. Donald.*

For the reason stated and despite sufficient evidence of defendant's guilt, we reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.