THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN T. ROOFENER, Defendant-Appellant.

Third District    No. 79-446

Opinion filed April 23, 1981.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Norman T. Roofener, appeals from his conviction for armed robbery following a jury trial. The defendant was sentenced to six years' imprisonment. On appeal, the only issue raised is whether the defendant was denied his constitutional right to counsel where the trial court allowed the motion of the defendant's appointed counsel to withdraw for ethical reasons on the date of the trial and after the jury had been selected, and denied to the defendant the opportunity to have other counsel, thus requiring the defendant to proceed *pro se*, without first securing a knowing and intelligent waiver of the defendant's right to counsel. The State frames the issue in terms of whether the trial court had discretion to limit the defendant's choice to either proceeding with his appointed counsel or proceeding *pro se*.

Only a brief recital of those facts pertinent to the issue raised on appeal need be given. The defendant was indicted by the Will County grand jury for armed robbery, a violation of Section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)). At his arraignment, the defendant received a copy of the indictment and entered a plea of not guilty.

On the date set for trial, April 30, 1979, the defendant appeared with Assistant Public Defender William McSherry. Before the jury was selected, McSherry informed the court that two alibi witnesses he had planned to

call would not be called and that only the defendant would testify for the defense. The jury was then selected and, following their selection, court was recessed until the following morning due to "unexpected complications."

At that time a hearing was held before the trial judge on the motion of the defendant's counsel to withdraw both himself and the public defender's office from the case. Present at the hearing, which was held outside the presence of the jury, were the defendant, his counsel and the prosecutor. The reason given for McSherry's withdrawal was the failure of the defendant to cooperate with him in the defense of the case. More specifically, McSherry indicated that the defendant desired to have at least one witness called whom the defense counsel refused to call for ethical reasons.

McSherry suggested that the court appoint another attorney for the defendant or advise him of his right to act as his own attorney. The trial judge questioned whether appointing another attorney would solve the ethical problems. The following colloquy then ensued:

"THE COURT: And, you know, if Mr. Roofener wants to proceed by himself, and you feel that you cannot ethically proceed, if you know, if you're certain of that, we'll just let Mr. Roofener proceed by himself.

Mr. Roofener, are you aware of that? You have a right to conduct this trial by yourself, if you so desire. Apparently Mr. McSherry feels that the situation is now he cannot continue to conduct the defense, and as far as I can see it is not a problem that can be solved by another attorney.

Apparently there are things you want done that he doesn't feel, as an attorney, he can do. And you do have a constitutional right to defend yourself, and you certainly can do whatever you want to, within the law.

So, as far as I am concerned, at this stage *you can either continue with Mr. McSherry or continue by yourself*. So, are you ready to make that decision?

THE DEFENDANT: Yes, I would make it.

THE COURT: What do you want to do?

THE DEFENDANT: *Could I get another attorney?*

THE COURT: *No, you're not going to get another attorney.*

THE DEFENDANT: I will just go on by myself, then.

THE COURT: Okay, fine. Show that motion of Mr. McSherry to withdraw—

PROSECUTOR: Judge, if I may, before you dictate those minutes, can I speak to Mr. McSherry for one moment, please?

THE COURT: Sure, go ahead.

(Brief pause.)

DEFENSE COUNSEL: Judge, if I—

THE COURT: I think we may need a little more on the record. Are you asking to leave because of ethical considerations, Mr. McSherry?

DEFENSE COUNSEL: Yes, Judge.

PROSECUTOR: I take it there are witnesses going to be called and you cannot vouch for their honesty, is that part of the problem?

DEFENSE COUNSEL: I cannot vouch for the credibility of the witness.

THE COURT: I don't know how much more is needed on the record.

PROSECUTOR: Judge, just for the purposes of what may come in the future, the Court's decision as far as the People are concerned is soundly based in the case law and without citing particular instances, I would only cite for the record the Illinois Supreme Court case of *People versus Brown,* 294 N.E.2d 285; the Third District Appellate case which came from this county, case arising before Judge Orenic in *People versus Lowery,* 9 Ill. Dec. 41, and 366 N.E.2d 155; and a case cited in Lowery from the Supreme Court of the State of North Carolina, *State versus Robinson,* that is cited at 224 S.E.2d 174.

The Robinson case specifically dealt with an attorney's withdrawal over a problem with a witness, just such as what Mr. McSherry is faced with, and the defendant being given the choices that the Court has made available to him today.

THE COURT: Fine. Okay. You're relieved, Mr. McSherry.

DEFENSE COUNSEL: Thank you, your Honor. Your Honor, this would also relieve the whole P.D. office, I take it?

THE COURT: Certainly. Thank you." (Emphasis added.)

Following this exchange the court advised the defendant that opening statements were about to begin. The defendant requested and was granted a 10-minute recess to talk to McSherry. McSherry then left the courtroom. The jury was brought in, and the judge advised them that the defendant had decided to conduct his own defense. An opening statement was given by the prosecutor, but the defendant elected not to give one.

At the close of the State's case, a conference was held outside the presence of the jury to further pursue the reasons given for the withdrawal of the defendant's counsel. Present at the conference were the trial judge, the defendant, his former counsel, and the prosecutor. The trial judge

concluded that the attorney's representations were sufficient for the record. McSherry verified that a question of privilege was involved, and the court decided that no further inquiry would be of use.

The defendant then indicated that he wished to call as witnesses David, Patricia, and Sharon Helton, his alleged codefendant, Mark Howard, and Karen Niell. The court was informed that Karen Niell had moved to California, and the judge refused to grant a continuance until she could be located. Because Mark Howard had apparently confessed to the offense and implicated the defendant, an inquiry was made as to whether he would testify. For purposes of the inquiry, the court appointed private counsel to represent Howard since he was being represented by McSherry of the public defender's office. In consultation with his attorney, Howard decided not to testify. The prosecutor then made known to the court statements given to police officer Luchowski by David Helton and Sharon Helton and to Officer Pesavento by Patricia Helton which would impeach their testimony. The prosecutor said he had given a memorandum of their statements to McSherry and knew that McSherry had discussed them with the defendant. After asking the defendant if he understood that the testimony of his witnesses would be impeached, and receiving an affirmative response, "I might as well go ahead with it," the trial judge had the jury brought in and the trial continued. The defendant presented the testimony of David, Patricia and Sharon Helton and took the stand on his own behalf. A closing statement was made by the prosecutor, but none was offered by the defendant. The jury then returned a guilty verdict.

■■ Under the facts of this case, the question before us is whether the defendant was denied his sixth amendment right to counsel or whether he was properly admonished pursuant to Supreme Court Rule 401(a) before proceeding *pro se.* The State urges the position that it was within the court's discretion not to offer the appointment of other counsel but to require the defendant to choose between continuing with McSherry or proceeding *pro se.* We agree that, absent a showing of prejudice by McSherry's continued representation, the defendant had no right to the successive appointment of counsel. However, the fact remains that no other counsel was appointed, and the defendant proceeded *pro se.* Because the defendant was tried without counsel, our primary concern must be whether he has knowingly and intelligently waived his constitutional right to be represented by counsel. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) A waiver will not be presumed. Every reasonable presumption against waiver should be entertained. (*Boyd v. Dutton* (1972), 405 U.S. 1, 30 L. Ed. 2d 755, 92 S. Ct. 759.) We find reversible error because we do not know whether the defendant did

knowingly and intelligently waive his constitutional right to be represented by counsel. In so finding, we refute the State's argument that the defendant's rejection of his appointed counsel, who appeared neither incompetent or prejudicial to the defendant, resulted in an effective waiver of his right to counsel.

In *People v. Woods* (1980), 84 Ill. App. 3d 938, 405 N.E.2d 1238, a case not then available to the trial court herein, the court discussed Supreme Court Rule 401(a), which sets forth guidelines to be used by the trial court in determining whether the defendant has made a knowing and intelligent waiver of his right to counsel. (See also *People v. Shaw* (1980), 89 Ill. App. 3d 69, 411 N.E.2d 143.) According to Rule 401(a), before the trial court accepts a waiver it should address the defendant in open court and inform him of and determine that he understands:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and if he is indigent, to have counsel appointed for him by the court." (Ill. Rev. Stat. 1979, ch. 110A, par. 401(a).)

Substantial compliance is insufficient, and strict compliance with Rule 401(a) is required unless the defendant appears to have a high level of legal sophistication. See *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374; *People v. Jackson* (1978), 59 Ill. App. 3d 1004, 376 N.E.2d 685.

■■ In the case at bar the record reflects that the defendant was somewhat confused by the proceedings which resulted in the withdrawal of his appointed counsel. After he was told that no one from the public defender's office could represent him, he asked "to get" another attorney. Under these circumstances, case law has now made it clear that the trial court is obliged, pursuant to Rule 401(a), to inform the defendant and make sure he understands the nature of the charge against him, the possible penalties, and his constitutional right to counsel. We do not believe, as the State contends, that because the purported waiver occured at trial rather than during the pretrial stage Rule 401(a) does not apply. By its express terms, Rule 401(a) is not limited to the pretrial stage. Also, we believe it would not have been a "hollow and useless exercise to admonish the defendant as to the nature of the charges, the possible penalties, and the right to representation by the public defender" as the State argues. Simply because the defendant had the assistance of counsel through the jury selection process is no guarantee that he understood

either the nature of the charge against him and the possible penalties or "the dangers and disadvantages of self-representation." *Faretta v. California* (1975), 422 U.S. 806, 835, 45 L. Ed. 2d 562, 582, 95 S. Ct. 2525, 2541.

At the time of trial the defendant was 18 years of age, possessed an eighth grade education, had a juvenile file, but had never been charged with a felony or with any other crime as an adult. Given these circumstances and the comments made by the defendant during the hearing on the motion of his attorney to withdraw, it is apparent that the defendant lacked a level of legal sophistication which warrants less than strict compliance with Rule 401(a). See *People v. Woods* (1980), 84 Ill. App. 3d 938, 405 N.E.2d 1238; *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374.

■■ The apparent conflict between the defendant and his appointed counsel did raise ethical considerations. Absent some resolution of the conflict, the defendant's counsel was correct in seeking to withdraw, and the trial court properly allowed the withdrawal of both attorney McSherry and the public defender's office. Unfortunately, the action taken by the court was premature. Although we are both cognizant and appreciative of the court's desire to expedite matters, it should not have granted the motion to withdraw without first directly addressing the defendant as to the problems raised by the trial tactics he desired. Under the circumstances of this case, these admonitions should have been made to the defendant prior to the court's ruling on the motion of the defense counsel to withdraw. If the defendant still insisted on calling the impeachable witnesses, the motion to withdraw should have been granted, and the defendant "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California* (1975), 422 U.S. 806, 835, 45 L. Ed. 2d 562, 582, 95 S. Ct. 2525, 2541.

It is apparent from the record that the defendant's decision to represent himself prevented him from receiving a fair trial. No opening or closing statements were made by him, his cross-examination of the State's witnesses was meager at best, and he presented the highly damaging testimony of three witnesses whose testimony was subject to impeachment by the State. For the reasons stated and despite sufficient evidence of the defendant's guilt, we must and do reverse the judgment of the circuit court of Will County and remand this case for a new trial.

Reversed and remanded.

ALLOY, P. J., and SCOTT, J., concur.