THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY CLARK, Defendant-Appellant.

First District (4th Division)   No. 80—3108

Opinion filed September 16, 1982.

Steven Clark and Richard F. Faust, both of State' Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Stephen R. Botti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Gregory Clark, was charged by information with three counts of theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)) and three counts of knowing possession of a stolen vehicle (Ill. Rev. Stat. 1979, ch. 95½, par. 4—103(a)). Following a bench trial in the circuit court of Cook County, he was convicted of three counts of knowing possession of a stolen vehicle and found not guilty of theft. He was sentenced to the Illinois Department of Corrections to serve three concurrent terms of five years each.

Defendant raises three issues on appeal: (1) whether the trial judge erred in denying defendant's request for an appointed attorney other than the public defender; (2) whether the convictions for knowing possession of a stolen vehicle should be reversed because the only testimony presented by the State to prove an essential element of the crimes charged was inadmissible hearsay; and (3) whether the trial court erred in entering three judgments of conviction and imposing separate, concurrent sentences for the three counts of knowing possession of a stolen vehicle.

We reverse the judgment of the trial court.

FACTS

The rather unusual course taken by the proceedings in this case began on November 5, 1979, when Clark appeared in court to ask for appointment of counsel other than the public defender. The trial judge denied his request for a "bar association attorney," explaining that he could not appoint counsel other than the public defender unless, for example, multiple defendants presented antagonistic defenses and one defendant was represented by the public defender. At this point Clark accepted the appointment of the public defender, pleaded not guilty to the charges of theft and knowing possession of a stolen vehicle, requested copies of all documents filed in response to discovery motions, and stated that he wished to conduct his own defense with the help of the public defender. The trial judge carefully explained the risk of appearing *pro se*, but Clark insisted that he wanted to defend himself with the assistance of the public defender. The proceedings were then recessed for two weeks.

At his next appearance, on November 21, 1979, Clark told the trial court that the public defender would be his attorney of record

and would conduct Clark's defense with the defendant's assistance. However, by the time the trial date arrived, August 5, 1980, the public defender, Donald Jurewicz, requested a clarification of his position because Clark had continued to request appointment of outside counsel. Jurewicz asked to withdraw, whereupon the judge, after stating that he had no real grounds for appointing counsel other than the public defender, gave Clark all the admonishments necessary when a defendant desires to represent himself. Clark responded that he needed some help but didn't want Jurewicz as his attorney. The judge explained that Clark could not choose a particular appointed attorney, and Jurewicz would not be removed from the case unless his representation was totally inadequate. Clark replied that Jurewicz was a sham because "he told me we couldn't win the case." The judge, after questioning the attorney, told Clark that Jurewicz would represent him competently, whereupon Clark asked to be excused from the courtroom.

The judge then told Clark he could represent himself with Jurewicz' assistance, but Clark rejected any connection with the attorney. Further admonishments were given about the risks of Clark's appearing *pro se*, and Clark stated again that he wanted an attorney but not Jurewicz. When the judge repeated that he had no reason to replace Jurewicz and that trial was about to commence, Clark again asked to be released from the courtroom. The judge, agreeing to excuse him, arranged for a speaker to be set up so Clark could hear the proceedings from another room; he then informed Clark that the trial would not go on in Clark's absence unless his interests were represented.

Clark then asked for a continuance to find some witnesses and to prepare to conduct his own defense completely *pro se*. However, because the State's witnesses were present and ready, and the case now had been set for trial after being continued six times, the trial judge directed that the State present its case immediately, and then Clark would be allowed some time to prepare his own defense. Jurewicz informed the court that the public defender's office, unknown to Clark, had already attempted to locate Clark's witnesses but had been unsuccessful. When the judge repeated that trial was about to begin, Jurewicz, after asking for a clarification of his position, turned over his entire file to Clark, whereupon Clark left the courtroom. The judge's final decision on Clark's representation was that Jurewicz was allowed to withdraw as attorney of record but would be present in the courtroom in an advisory capacity.

After the speaker had been installed in a nearby conference room, the judge began the proceedings by noting for the record that Jure-

wicz was sitting in the jury box rather than at counsel table, and by instructing the defense attorney to go back to Clark at the conclusion of each witness' direct testimony to inquire if he had any questions for the witness. Jurewicz was to make appropriate objections during the course of the testimony and then ask Clark if he wished to cross-examine the witness or have testimony stricken. This procedure was then followed throughout the trial.

The events leading up to Clark's arrest were established by Daniel McDevitt, an investigator for the Illinois Department of Law Enforcement. He testified that on August 25, 1979 at about 6:30 p.m., he received a telephone call at home from Gregory Clark, during which Clark offered to sell him two 1979 Mercury Cougar automobiles for $500 apiece. McDevitt responded that he was interested in purchasing the vehicles but could not do so until the following Monday, August 27, 1979. Later that evening Clark again called McDevitt to ask if McDevitt could purchase one vehicle that evening because the person holding the cars needed money quickly. McDevitt repeated that he would not take the cars until Monday.

At 9:30 a.m. on Monday, August 27, McDevitt received a third call from Clark, this time at his office. Clark told McDevitt that an additional car was now available for sale, a 1979 Mercury Zephyr, at a price of $400 to $500. McDevitt then arranged to meet Clark at 2:30 p.m. that day at a Burger King Restaurant in Calumet Park.

Shortly after 2 p.m. on August 27, 1979, McDevitt, accompanied by another investigator, Dale Sayset, drove into the restaurant parking lot. Clark came out of the restaurant, and after pointing out the three cars, he led the investigators to meet three other men seated in one of the cars. McDevitt then asked if they all could move to another location, so Clark instructed each of his three companions to drive one of the cars and follow him and the two agents in McDevitt's car.

The four cars then were driven to the parking lot of the Blue Island Plastics Company, whereupon McDevitt directed the other three drivers to park their cars at the far end of the lot. He then showed his badge to Clark and placed him under arrest. Clark's three companions were also arrested. McDevitt obtained the vehicle registration numbers from each of the three Mercury vehicles, entered the numbers into the Secretary of State's computer file, and in response to a teletype reply, called the office of Budget Rent-A-Car company. On the following day, August 28, 1979, Porter Hopps, a security manager for Budget, met McDevitt, and the two men went to J & R Towing Company, where Hopps inspected the cars and matched the vehicle registration numbers with his own records. McDevitt then released

the cars to Hopps.

Following the conclusion of McDevitt's testimony, Jurewicz went back to ask Clark if he had any questions for the witness. Clark replied that he could not hear over the speaker and that he did not want to participate or have the attorney participate in any manner during the course of the trial. After the judge, the deputy sheriff, and the attorney for the State confirmed that the speaker was working properly and Clark could hear if he chose to, the trial continued, Jurewicz continuing to make objections and conduct cross-examination.

The only other State's witness was Porter Hopps, security manager for Budget Rent-A-Car. He testified that the vehicles were registered in the name of Budget and that he had marked them with his own control number. Despite repeated objections by Jurewicz, Hopps also was allowed to testify that Gregory Clark was not authorized to possess or sell any of the automobiles in question. On cross-examination, however, Hopps admitted that he did not know where the rental vehicles were supposed to be located at the time Clark was exercising authority over them, he did not supervise the rental of any of the vehicles, and he had no personal knowledge of the location of the vehicles from the date of their purchase by Budget until the day of Clark's arrest. When the prosecution attempted to have the leasing agreements covering the vehicles entered into evidence through the testimony of Hopps, the judge ruled against their admission on the ground that no proper foundation had been laid. Hopps also admitted that his statement that Clark was not authorized to possess or sell the automobiles was based "to a certain extent" on information he had learned from reading the leasing agreements for the three cars.

At the close of the State's case, Jurewicz moved for a mistrial, but the motion was denied. Clark requested and was granted a transcript of the trial and a 30-day continuance to prepare further for trial. The proceedings were adjourned to October 7, 1980. Although Jurewicz attempted to assist Clark to prepare his case during the recess, when court reconvened on October 7, Clark objected to Jurewicz having participated in the earlier proceedings and then discharged him. The trial was continued again until October 15, 1980. At that time, Clark presented no witnesses but instead conducted a rebuttal argument, pointing out discrepancies in Porter Hopps' testimony and noting that the State had never established that the vehicles had been reported stolen.

At the conclusion of Clark's argument, the trial court found him guilty on the three counts of knowing possession of a stolen vehicle. Following a post-trial hearing during which arguments in aggravation

and mitigation were presented, the judge imposed three extended term sentences of five years each, to be served concurrently.

OPINION

I

■ The threshold question, raised by the State, is whether the defendant has waived his right to appeal the first two issues because he failed to file a written post-trial motion preserving those issues for review. Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)) states that only plain errors affecting substantial rights may be noticed on appeal where the issues were not brought to the attention of the trial court. In the instant case, the key phrase countering the State's waiver argument is, of course, "brought to the attention of the trial court." Because the purpose of the waiver doctrine is to enable the reviewing court to have the benefit of the trial court's judgment on an issue, the reviewing court may consider the issue when it has in some manner been brought to the attention of the trial court. (*People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511.) Preservation of issues for review, therefore, may be accomplished by proper objection during trial or by argument in a post-trial motion. (*People v. Fleming* (1964), 54 Ill. App. 2d 457, 203 N.E.2d 716.) It is clear from the record that all the issues noted herein were vigorously and repeatedly preserved for review by both Clark and Jurewicz, and therefore none of defendant's issues shall be deemed waived.

II

The defendant's first contention on appeal is that at the pretrial hearing, the judge erred when he denied defendant's motion for appointed counsel other than the public defender. Defendant claims the trial judge mistakenly thought that he had no discretion to appoint private counsel unless multiple indigent defendants had antagonistic defenses. Defendant cites *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, for the proposition that "[t]here is error when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented." (56 Ill. 2d 560, 565, 310 N.E.2d 166, 169.) However, on the basis of our analysis of the trial judge's language and its statutory foundation, we conclude that defendant's claim of error is without merit.

The record discloses that at the pretrial hearing, defendant, who had previously stated that he did not want to be represented by the public defender, was addressed by the judge as follows:

"Well, under the Statute, it is not just the fact that you don't want the P D, because I do not have the authority to appoint [anyone other than] the P D unless the P D is representing someone whose defenses are antagonistic to yours.

For example, if there was a co-defendant that made a statement implicating you, and the P D represented that man, then there would be a reason to appoint another attorney, but the law says it isn't quite that cut and dry.

Now I can [appoint] the P D. If you don't want the P D you can get your own attorney, but that is the Statute as amended, Section 113—3, as was amended within the last two years.

* * *

So, under the law I have no choice except to deny that motion."

The statute in question, which guarantees the right to counsel and authorizes the trial court to appoint counsel (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b)) states,

"In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. *** [I]f the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the public defender, the court shall appoint as counsel a licensed attorney at law of this State, except that in a county having a population of 1,000,000 or more the Public Defender shall be appointed as counsel in all misdemeanor cases where the defendant is indigent and desires counsel unless the case involves multiple defendants, in which case the court may appoint counsel other than the Public Defender for the additional defendants."

The statute clearly states that the public defender shall be appointed as counsel for an indigent defendant unless such an appointment will prejudice the rights of the defendant. Contrary to defendant's assertion, unless there is a determination that such prejudice will result, the court does not have discretion to appoint counsel other than the public defender. It is clear that the example of multiple indigent defendants given by the judge was taken from the second part of the statute dealing with misdemeanors, in which case the trial judge does have such discretion without a finding that the rights of the defendant will be prejudiced by the appointment of the public defender.

■■ The defendant's erroneous claim of judicial error has resulted

from his placing reliance on precedent cases decided before 1977, the year the statute in question was amended. Prior to 1977, the statute read, "*** [I]f the defendant requests counsel other than the Public Defender, the court may appoint as counsel a licensed attorney." (Ill. Rev. Stat. 1975, ch. 38, par. 113—3(b).) Cases decided under the earlier version properly used the language "within the trial court's discretion," such discretion being judicially limited to a showing of good cause. (*People v. Drew* (1976), 36 Ill. App. 3d 807, 810, 345 N.E.2d 45, 48; see *People v. Johnson* (1974), 24 Ill. App. 3d 152, 159, 320 N.E.2d 69, 75.)[1] In 1977, by Public Act 80—846 (1977 Ill. Laws 2494) the legislature amended the statute to include the language directing the appointment of the public defender unless prejudice to the defendant was shown. *People v. Woods* (1980), 84 Ill. App. 3d 938, 405 N.E.2d 1238, correctly reflects the statutory amendment in that it limited the right of an indigent defendant to appointed counsel other than the public defender not to the discretion of the court but rather to a showing of prejudice to the rights of the defendant.

■ In the instant case, the only possible prejudice to defendant's rights was revealed in his statement to the court that the public defender assigned to him that day had said, in defendant's words, that "we couldn't win the case." The appointed counsel, Donald Jurewicz, affirmed that he would provide defendant with the best defense he could, whereupon the court stated that unless defendant wished to represent himself, the public defender would remain as his appointed counsel. An examination of the record and the rather unusual trial procedure that ensued shows that despite the attorney's difficulty in complying with both defendant's request that he withdraw as counsel and the judge's determination that he remain, the attorney effectively protected his client's interests even though defendant refused to participate or to allow his attorney to use his own judgment effectively in conducting the defense. Finding no prejudice to defendant's rights, we accordingly find no error in the trial court's denial of defendant's motion for appointment of private counsel.

### III

Defendant next contends that because inadmissible hearsay was the only evidence offered by the State to prove an essential element of the crime charged, his convictions must be overturned. The chal-

---

[1]One case decided after 1977, *People v. Slaughter* (1980), 84 Ill. App. 3d 88, 93, 404 N.E.2d 1058, 1062-63, also uses the earlier language and reasoning, mistakenly using only pre-1977 authority.

lenged testimony was that of Porter Hopps, security manager for Budget Rent-A-Car. Hopps testified to his participation in the recovery of the three automobiles from J & R Towing Company and that Budget last had had possession of the cars "on or about August 24, 1979." Hopps repeatedly testified to the existence of various business records, but each time the prosecution attempted to have him testify to the contents of the records, defendant's attorney would object. The first several times this happened, the judge sustained the objections. However, after repeated attempts by the State to elicit testimony from Hopps concerning the contents of the leasing agreements, the judge began saying "If he knows" and allowing the witness to answer despite defense attorney's strenuous objections to each question asking for information contained in the leases. In this manner the State allegedly established that Budget did not authorize defendant's possession or sale of any of the three cars in question. But when the State requested that the leasing agreements be admitted into evidence as proof of defendant's wrongful possession, the court sustained defendant's objection to their admission on the ground that insufficient foundation had been laid. Hopps' testimony was not stricken, however, even though he admitted on cross-examination that his knowledge was based "to a certain extent" on company records he did not make and over which he exercised no control or supervision. Indeed, Hopps never testified that he had any personal knowledge of the process by which the information on the leasing agreements was obtained or verified.

It is clear that the trial court properly excluded the lease agreements as evidence. Under the statute governing admissibility of business records as evidence in a criminal proceeding (Ill. Rev. Stat. 1979, ch. 38, par. 115—5(a)), a writing (1) made as a memorandum of a business transaction or event, (2) recorded contemporaneously with the event, and (3) kept in the ordinary course of business as part of the business, is admissible as evidence of that transaction or event. While it is true that in Illinois the proper witness to authenticate the business record need not be the person who actually made or supervised the making of the entries, he must have personal knowledge of the business and of the records themselves. For example, in *Central Steel & Wire Co. v. Coating Research Corp.* (1977), 53 Ill. App. 3d 943, 369 N.E.2d 140, the salesman who had taken a telephone order for his company's product was allowed to authenticate the billing statement for the order on the ground that he had personal knowledge of both his company's billing procedure and the accuracy of the names of the parties and material ordered. Similarly, in *612 North Michigan Avenue*

*Building Corp. v. Factsystem, Inc.* (1977), 54 Ill. App. 3d 749, 370 N.E.2d 236, a building manager of 20 years' tenure was allowed to testify about rent due from one tenant because he supervised the maintenance of the building's records.

■ In contrast, an examination of the records in the instant case reveals that Hopps had no independent knowledge of the contents of the lease agreements. The only type of information he provided for the lease agreements was a record of the various vehicle identification and control numbers of the cars themselves. Hopps could not vouch for the records' accuracy concerning the rental status or the lessees of the cars in question, and therefore the records were inadmissible hearsay, out-of-court statements offered to prove the truth of the matter asserted. "[Such statements depend] completely for [their] value upon the credibility of the out-of-court declarant. Such statement[s are] inadmissible because the party against whom [they are] offered lacks the opportunity to test the value of the statement[s] by cross-examining [their] source." *People v. Parrott* (1976), 40 Ill. App. 3d 328, 330, 352 N.E.2d 299, 302.

■ If the original business records themselves are available, testimony consisting of an oral summation of their contents is not an acceptable alternative, even if the summary is given by the records' custodian. (*Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10.) In the instant case, since the original records were found inadmissible because the witness had insufficient personal knowledge to provide an adequate foundation, it is obvious to us that the oral testimony about the contents and interpretation of the same records by the same incompetent witness is inadmissible hearsay and cannot be allowed to stand. *LeRoy State Bank v. J. Keenan's Bank* (1929), 337 Ill. 173, 169 N.E. 1.

■ When we examine the entire case presented by the State, we can see clearly that without Hopps' testimony based on the inadmissible records, all that the State has proven is that defendant was arrested while trying to sell three automobiles with vehicle registration numbers which had previously been recorded by Hopps as identifying new cars purchased by Budget Rent-A-Car. We necessarily conclude that the State did not prove beyond a reasonable doubt that defendant knowingly possessed stolen vehicles because no competent evidence was presented to prove defendant's unauthorized control of the automobiles. "[W]here the hearsay evidence, as here, is the *only* evidence as to an essential element of the State's case, we think that its admission cannot fail to constitute reversible error ***." (*People v. Hines* (1973), 12 Ill. App. 3d 582, 587, 299 N.E.2d 581, 584.) Despite

the presumption that in a bench trial the court has considered only proper and competent evidence (*People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453), that presumption is completely rebutted where, as here, the trial court's decision obviously was based on incompetent evidence.

In light of the above, we reverse defendant's convictions. Inasmuch as the third issue raised by defendant on appeal concerned the propriety of designating his actions as three separate offenses of knowing possession of a stolen vehicle, we find that our decision on the second issue disposes of the third as well.

Reversed.

JOHNSON, P. J., and ROMITI, J., concur.