THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE THOMPSON, Defendant-Appellant.

Second District   No. 2—00—0939

Opinion filed March 8, 2002.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kenneth L. Gillis, of Chicago, for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

After a jury trial, defendant, Wayne Thompson, was found guilty of the unlawful delivery, while on a public way within 1,000 feet of residential property owned, operated, or managed by a public housing agency, of less than one gram of a substance containing cocaine (720 ILCS 570/401(d), 407(b)(2) (West 1998)) and sentenced to 10 years' imprisonment. On appeal, defendant argues that the trial court improperly allowed a public housing security manager to testify about the ownership of the property near the site of the narcotics transaction. We affirm.

A first trial resulted in a mistrial after the jurors reported that they were unable to reach a verdict. During the second trial, the State's first witness was Ivan Martinez. Martinez testified that he was employed in the technical investigations unit of the Illinois State Police and was responsible for assisting investigative agencies using audio and video equipment. On October 10, 1998, Martinez installed video recording equipment in a vehicle that Sergeant Mark Fritz would be using to conduct an undercover drug operation. Martinez tested the equipment, determined that it was working properly, and inserted a new tape in the machine. After the equipment was used during the October 10 investigation, Martinez retrieved the tape from the machine and gave it to Inspector Andrew Montalbano.

Montalbano testified that he was employed with the Roscoe police department and assigned to the State Line Area Narcotics Team (SLANT). On October 10, 1998, he received the tape from Martinez and viewed it. The tape contained about one hour of video of Fritz meeting with people on the street. Montalbano placed the tape in an evidence vault.

Fritz testified that he was employed with the Illinois State Police and assigned to SLANT. On October 10, 1998, he was assigned to purchase drugs. Fritz was dressed as a contractor and rode in an unmarked pickup truck equipped with hidden video recording equipment.

At about 4 p.m., Fritz went to the Blackhawk housing development. He explained that the streets in the Blackhawk development were more narrow than public streets and that houses across the street from each other were about 25 feet apart. Looking for people who might be willing to sell drugs to him, he drove around the development. Fritz explained that, if he nodded his head or waved at a person and the person waved or nodded in return, then that person was probably interested in purchasing or selling drugs.

When Fritz arrived near 1403 Birch Court, he saw a man, whom he identified in court as defendant, sitting in a brown vehicle parked on the street. As Fritz drove past the other vehicle, he nodded and waved at defendant, and defendant nodded back. Fritz turned his truck around and came back to defendant. Defendant exited his vehicle and instructed Fritz to park across the street from 1403 Birch.

Fritz showed defendant his money and told him that he was "looking for a twenty," which means a $20 rock of cocaine. Defendant walked to 1403 Birch, opened the door, and said something like, "You got a customer out here." After about one minute, defendant returned with a woman. Defendant stood near his car while the woman walked to Fritz and made the delivery. Fritz went to a designated location, met with Inspector Denis Reser, and gave him the item that he had just purchased.

Fritz explained that, after making purchases like the one on October 10, 1998, he would show the video to police officers assigned to the area where the purchase took place. If an officer was able to identify the person on the video, then Fritz would view a jail photo, if available, to confirm whether the named person was the individual who sold him drugs. Fritz testified further that he met with defendant after he was arrested and believed that defendant was the person who arranged the October 10, 1998, sale on Birch Court.

Reser testified that he was involved in the undercover operation on October 10. After returning from the Blackhawk housing development, Fritz handed Reser a plastic bag containing a tan-colored rock substance. Reser placed the item into a plastic evidence bag and sealed it. Both Reser and Fritz initialed it. Reser transported the item to the police department and placed it in an evidence vault. One or two days later, Reser transported the item to the Illinois State Police crime laboratory and gave it to Kelly Smitley.

Paul Hackerson testified that, for the previous two years, he was employed by the Rockford Housing Authority (Authority). He was the head of security, and his responsibilities included the Blackhawk housing development. According to Hackerson, the Blackhawk development was owned by a public housing agency. Over the previous two

years, Hackerson visited the Blackhawk development at least once a month. He prepared a diagram, based on the original blueprints prepared by engineers, of the eastern portion of the development and testified that the diagram accurately represented the layout of the development in 1998. Hackerson explained that one of the purposes of the diagram was to help the police officers in his unit locate homes in the development. According to Hackerson, 1403 Birch Court was on property of the Authority, and the street adjacent to it was about 30 feet wide.

During cross-examination, Hackerson acknowledged that he did not have a background in surveying or civil engineering and that he never surveyed the Blackhawk development. Although the Authority issued Hackerson a set of records showing the ownership of the Blackhawk development, he was not the keeper of the records. After cross-examining Hackerson, defense counsel attempted to object to his testimony. The trial court instructed her to make her objection outside the jury's presence.

Kelly Smitley testified that she is a forensic scientist employed by the Illinois State Police. After explaining her qualifications, she testified that she chemically tested the substance she received from Inspector Reser and determined that it contained cocaine.

After the State rested, defendant argued that the State failed to lay a proper foundation for Hackerson's testimony about the ownership of the Blackhawk development and, as a result, failed to establish that the offense occurred within 1,000 feet of property owned by a public housing agency. Accordingly, he sought a directed verdict. The trial court found that Hackerson was qualified to testify and therefore denied the motion. The court also admitted, over a defense objection, the diagram of the development. The diagram does not expressly state who owns the development. "Rockford Housing Authority" is printed on the lower right corner of the diagram.

Defendant did not present any evidence. The jury found defendant guilty. The trial court denied defendant's posttrial motions and sentenced defendant to 10 years' imprisonment. After the court denied defendant's timely motion to reconsider the sentence, defendant timely appealed.

Defendant's sole contention on appeal is that the trial court should not have allowed Hackerson to testify about the ownership of the Blackhawk housing development. Because his testimony must have been based on his review of Authority records or what others at the Authority may have told him, it was hearsay. According to defendant, because Hackerson was not the keeper of the Authority's records, he was unqualified to testify about whether his employer owned, oper-

ated, or managed the Blackhawk development. As a result, the State was required either to present the testimony of someone with direct knowledge of ownership or to introduce official public records establishing ownership.

■ Hearsay is testimony of an out-of-court statement offered to establish the truth of the matter asserted therein and whose value thus depends upon the credibility of the out-of-court declarant. *People v. Armstead*, 322 Ill. App. 3d 1, 11 (2001). The trial court's ruling on an evidentiary issue during the trial will not be overturned on appeal absent a clear abuse of discretion. *People v. Connolly*, 322 Ill. App. 3d 905, 920 (2001).

We are aware of no decisions that have addressed the precise issue before us. Contrary to defendant's contention, however, *People v. Morgan*, 301 Ill. App. 3d 1026 (1998), supports the trial court's ruling. In *Morgan*, the State relied on the testimony of one of the officers who observed the drug transaction to establish that the area near the site of the transaction was a public park. The defendant challenged the sufficiency of the evidence that he committed the offense within 1,000 feet of a public park. He argued that the officer was a layperson and therefore unqualified to testify about the status of the park. According to the defendant, the State was required to call a city or park district official or produce a certified copy of a plat of survey.

This court held that the officer's familiarity with the community was sufficient to allow him to testify about the status of the park. The court specifically rejected the contention that the State was required to produce recorded plats of survey to establish that the area was a legally dedicated city park. *Morgan*, 301 Ill. App. 3d at 1031-32.

Defendant argues that *Morgan* is not on point because *Morgan* involved a challenge to the sufficiency of the evidence while defendant here raises an evidentiary issue. *Morgan* applies here, however, because the court based its holding on the reliability rationale underlying the hearsay rule. The court stated:

> "It is generally understood that persons living and working in the community are familiar with various public places in the neighborhood, such as the location of streets, buildings, and the boundaries of counties and town lots. See *People v. Jones*, 6 Ill. 2d 252, 254 (1955); *Hawaii v. Kwak*, 80 Haw. 297, 302-04, 909 P.2d 1112, 1117-19 (1995). Such testimony is justified by the same circumstantial assurances of trustworthiness inherent in other types of common knowledge by repute." *Morgan*, 301 Ill. App. 3d at 1032.

*Jones* and *Kwak* both involved the hearsay rule. Thus, although it was ruling on the sufficiency of the evidence, the *Morgan* court also recognized that the officer was competent to testify about the park because it was a matter within his direct knowledge.

Also, defendant claims that *Morgan* is distinguishable because the ownership of a housing development cannot be established by common knowledge held by members of the community. We disagree. Moreover, Hackerson was not testifying simply as a member of the community but instead as an employee of the agency that was alleged to have owned, managed, or operated the Blackhawk development.

The *Morgan* court relied in part on *State v. Alston*, 111 N.C. App. 416, 432 S.E.2d 385 (1993). There, the defendant argued that, because the State did not introduce any maps or plats to establish the distance between a school and the site of the drug transaction, the evidence consisting solely of the testimony of a board of education employee was mere conjecture. The court disagreed and noted that the employee testified that, as a part of his job, he was required to be familiar with the property owned by the school system. The employee testified about the location of the school and the experience upon which his knowledge was based. *Alston*, 111 N.C. App. at 420, 432 S.E.2d at 387.

Similarly, here, as the head of security, Hackerson certainly was required to be familiar with property owned or managed by the Authority, and he testified that the Blackhawk development was one of the areas for which he was responsible. Therefore, as was the case in *Morgan*, the challenged testimony here was justified by circumstantial assurances of trustworthiness.

■ We conclude that Hackerson's testimony was legitimately based on knowledge he acquired while performing his duties as the head of security for the Authority and therefore fell within hearsay exception discussed in *Morgan*. The decision upon which defendant primarily relies, *People v. Clark*, 108 Ill. App. 3d 1071 (1982), is distinguishable. There, a rental company's security manager was not involved with the actual rental process and therefore had no personal knowledge of the rental status of the allegedly stolen vehicles. The security manager testified that his statement that the defendant was not authorized to possess or sell the vehicles was based on his review of the lease agreements for the cars. The lease agreements were excluded, however, because the State failed to lay the proper foundation for their admission as business records. As a result, the security manager's testimony was inadmissible hearsay. *Clark*, 108 Ill. App. 3d at 1081.

Because the possessory status of rental vehicles typically changes frequently, the fact that the security manager in *Clark* was not directly involved with the rental process was much more significant than the fact that Hackerson was not involved with maintaining the Authority's records. Here, Hackerson was directly responsible for overseeing security for the property in question. As we concluded above, Hackerson's testimony was based on his knowledge of the general status of the

property and not on hearsay or any improperly admitted document. Although the trial court admitted the diagram of the development, the diagram does not purport to establish the ownership of the development. In fact, the trial court stated that it would allow the diagram to go to the jury solely to help the jury to understand the events.

We note that a recent addition to the Code of Criminal Procedure of 1963 (725 ILCS 5/100—1 *et seq.* (West 2000)) supports our reasoning. The General Assembly added section 115—10.5, which is entitled "Hearsay exception regarding safe zone testimony." That section took effect on January 1, 2001, and provides:

> "(a) In any prosecution for any offense charged as a violation of Section 407 of the Illinois Controlled Substances Act *** the following evidence shall be admitted as an exception to the hearsay rule [*sic*] any testimony by any qualified individual regarding the status of any property as:
>
> * * *
>
> (3) residential property owned, operated, and managed by a public housing agency[.]
>
> * * *
>
> (b) As used in this Section, 'qualified individual' means any person who (i) lived or worked within the territorial jurisdiction where the offense took place when the offense took place; and (ii) is familiar with various public places within the territorial jurisdiction where the offense took place when the offense took place." 725 ILCS 5/115—10.5 (West 2000).

Under section 115—10.5, Hackerson clearly would be a "qualified individual." Section 115—10.5 is essentially a codification of the principle recognized in *Morgan*.

For these reasons, we cannot say that the trial court abused its discretion by allowing Hackerson to testify that the Authority owned the Blackhawk development. There is no dispute that the transaction occurred on a street within 1,000 feet of a residence in that development.

Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

BYRNE and CALLUM, JJ., concur.